UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

| | |
|---|---|
| **CASE NO.:** CV 12-03423 SJO (VBKx) | **DATE:** September 11, 2012 |
| **TITLE:** Jim Marshall Photography LLC v. Thierry Guetta, et al. | |

========================================================================

**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                                    Not Present
Courtroom Clerk                                    Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**          **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                         Not Present

========================================================================

**PROCEEDINGS (in chambers): ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT GOOGLE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** [Docket No. 28]

This matter comes before the Court on Defendant Google Inc.'s ("Google") Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion"), filed on July 31, 2012. Plaintiff Jim Marshall Photography LLC ("Plaintiff") submitted an Opposition to Google's Motion ("Opposition") on August 14, 2012. Google replied in support of the Motion ("Reply") on August 21, 2012. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for September 4, 2012. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **DENIES IN PART AND GRANTS IN PART** Defendant's Motion.

I.      FACTUAL AND PROCEDURAL HISTORY

The Complaint makes the following allegations. Plaintiff is a California limited liability company, and successor in interest to James J. Marshall, a photographer known for his photographs of popular musical performers. (Compl. ¶ 6.) Defendant Thierry Guetta is a California citizen and graphic artist who uses the pseudonym "Mr. Brainwash" in his work. (Compl. ¶ 7.) Defendant It's a Wonderful World, Inc. is a California corporation, whose business includes the promotion of Guetta's artistic works. (Compl. ¶ 8.) Defendant Google is a Delaware corporation qualified to do business in California. (Compl. ¶ 9.)

Plaintiff owns and claims copyright over a set of images depicting certain famous musical performers from the mid-20th century. (Compl. ¶¶ 13-18.) Guetta utilized several of these images in his artwork to create derivative artistic works, which were then displayed, offered for sale, and distributed without Plaintiff's permission. (Compl. ¶¶ 21-28.) Among these works was a large backdrop featuring enlarged photographs of John Coltrane and Jimi Hendrix that are owned by

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** CV 12-03423 SJO (VBKx) | **DATE:** September 11, 2012 |

Plaintiff ("backdrop"). (Compl. ¶¶ 30-32.) All of these artistic works constitute copyright infringement of Plaintiff's photographs. (Compl. ¶ 36.)

Google obtained permission from Guetta to use the backdrop and event space to host an event promoting Google's products and services, including its "Google Music" service. (Compl. ¶ 33.) Google "knew or should have known" that the backdrop infringed on Plaintiff's intellectual property, because it was aware of Guetta's reputation as an artist whose work relied on the unauthorized use of original copyrighted works by other artists. (Compl. ¶ 34.) Google also entered into a contract with Guetta to display the artwork, and saw the images used in the backdrop, before agreeing to use the space. (Compl. ¶ 34.) In spite of this, Google continued its planned promotional event in this space and invited, directed, requested, and authorized various photographers to photograph the infringing backdrop, knowing and expecting that said reproductions would financially benefit Google. (Compl. ¶ 35.) Google also directly displayed the backdrop through a video recording of the event on YouTube.com. (Compl. ¶ 38.)

Google invited and authorized event photographers to take pictures at the event, which the photographers thereafter distributed on the internet for their own profit. (Compl. ¶ 39.) Google also hired people to take pictures and a video of the event and posted the video online. (Compl. ¶ 38.) Google had the right and ability to supervise the event generally and chose to encourage photography of the backdrop. (Compl. ¶ 40.) Google directly profited from the infringing activity of those photographing the event by obtaining valuable promotion and advertising of Google's business and services. (Compl. ¶ 40.)

II.   DISCUSSION

In its Opposition, Plaintiff characterizes the Complaint as alleging that Google violated Plaintiff's copyright both directly and indirectly in three ways. First, Google directly infringed by (a) distributing and displaying unauthorized and infringing images to the public without authorization; and (b) displaying the same images over the internet without authorization. (Opp'n 6.) Second, Google contributarily infringed on Plaintiff's copyright by (a) hosting the event, thereby contributing to Guetta's infringement; and (b) allowing photographers to photograph the event, thereby contributing to the photographers' infringement. (Opp'n 7.) Third, Google vicariously infringed on Plaintiff's copyright by (a) hosting the event, thereby enabling Guetta's infringement; and (b) allowing photographers to photograph the event, thereby enabling the photographers' infringement. (Opp'n 12.)[1]

---

[1] Google notes correctly that Plaintiff's Opposition was filed after the 4 pm filing deadline enforced by this Court, (Reply 1,) and was therefore one day late (Reply 1). L.R. 7-12; Initial Standing Order ¶ 3(a). The Court observes that Google's Reply noting this deficiency is itself deficient in identical fashion. As such, and given the general judicial

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:   CV 12-03423 SJO (VBKx)           DATE:   September 11, 2012

In the Complaint, Plaintiff does not directly allege either contributory or vicarious infringement by Google through Guetta's creation and display of the allegedly infringing artwork. (Compl. ¶ 35.) However, Google appears to accept these claims as implied in the Complaint, responding to the sufficiency of these claims directly. (Mot. 7-9.) Because both parties appear to acknowledge that these claims potentially exist and have chosen to debate the sufficiency with which Plaintiff has pleaded them, the Court addresses these claims as if they were raised. The Court nevertheless advises Plaintiff that it must clarify in an amended complaint exactly which counts of contributory and vicarious liability are alleged and provide specific factual allegations to support these claims in accordance with the heightened pleading standard established in the wake of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Court further advises Plaintiff to determine whether it is alleging that Guetta displayed the infringing artwork with Google's assistance, or that Google directly displayed the infringing artwork. Although a plaintiff may plead alternative claims, Google is correct that it cannot have both directly displayed the artwork and indirectly helped Guetta to display the same artwork at the same event.

### A.   Legal Standard for Motions to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of the claims asserted in the complaint." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-200 (9th Cir. 2003). In evaluating a motion to dismiss, a court accepts the plaintiff's factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Ileto*, 349 F.3d at 1200. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. To plead sufficiently, Plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

/ / /
/ / /
/ / /

---

policy favoring decisions on the merits, the Court will consider both the Opposition and Reply in its analysis.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 12-03423 SJO (VBKx)        **DATE:** September 11, 2012

### B.  Direct Infringement

Google acknowledges allegations of direct infringement by Plaintiff in the Complaint (Mot. 2-3), but does not challenge the sufficiency of these allegations. As such, this Order does not address the portion of the Complaint alleging direct infringement by Google of Plaintiff's copyright; that portion of the Complaint will remain unaffected.

### C.  Contributory Infringement

A claim for contributory infringement requires a showing that a party "(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007). Implicit in this two-part test is a requirement that the underlying activity be infringing; "[s]econdary liability for copyright infringement does not exist in the absence of direct infringement." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). The Court addresses each of these required findings in turn.

#### 1.  Underlying Infringement

Direct infringement of a copyright requires the following showings: (a) ownership of a valid registered copyright; and (b) certain unauthorized actions made with respect to that copyright, including reproduction, creation of derivative works, distribution, and display. 17 U.S.C. §§ 106, 501(a). Google does not contest that Plaintiff has alleged sufficient facts to demonstrate ownership of a valid registered copyright. Nor does Google contest that Plaintiff has alleged sufficient facts to demonstrate that the parties through whom Google is alleged to have secondarily infringed, Guetta and the event photographers, in fact directly infringed on Plaintiff's copyright. For the purposes of this analysis, then, Guetta's and the photographers' actions are deemed to be directly infringing.

#### 2.  Knowledge of Underlying Infringement

The Ninth Circuit has held that a finding of contributory liability "requires that the secondary infringer 'know or have reason to know' of direct infringement.'" *Napster*, 239 F.3d at 1020. However, determining the correct standard does not end with that statement. In *Napster*, the Ninth Circuit further noted that, "absent any specific information which identifies infringing activity, . . . [an] operator cannot be liable for contributory infringement."[2] *Id.* at 1021. The Supreme Court

---

[2] The Court notes as a preliminary matter that Google, although indisputably a service provider granted a safe harbor from liability for contributory infringement absent statutory notice under 17 U.S.C. § 512(c)(3), does not qualify for such safe harbor in the instant case because it was not acting in its capacity as a covered service provider. *See Visa*, 494 F.3d at 795 n.4.

**CASE NO.:**   CV 12-03423 SJO (VBKx)         **DATE:**   September 11, 2012

outlined a stricter version of this standard in *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 929-30 (2005).  As the Ninth Circuit has held, "under *Grokster* an actor may be contributorily liable for intentionally encouraging direct infringement if the actor knowingly takes steps that are substantially certain to result in such direct infringement."  *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 727 (9th Cir. 2007).  *Grokster* does not expressly hold that "reason to know" of infringement *cannot* create a basis for liability, however.  The Ninth Circuit post-*Grokster* has cited *Napster* for the proposition that an operator "can be held contributorily liable if it 'has *actual* knowledge . . . [of] *specific* infringing material,'" *Amazon.com*, 487 F.3d at 729, but again, it does not explicitly overturn *Napster*.  At the least, though, it is clear that specific information on infringing activity is required to demonstrate contributory infringement liability, if not actual knowledge.

Plaintiff argues instead that under the standard articulated in *Napster*, Google is liable for contributory infringement so long as it "should have known" that Guetta's works constituted direct infringement, even if Google had no direct knowledge that the art was infringing.  (Opp'n 7-8.)  Based on this, Plaintiff urges that liability can be based on Google's imputed knowledge of Guetta's "reputation" as a copyright infringer.  To support this proposition, Plaintiff cites several cases that allegedly demonstrate application of this standard.  However, three of these cases were decided in other Circuits, and therefore provide at best persuasive value.  They also pre-date the updated knowledge standard mentioned in *Grokster* as articulated in *Amazon.com*.  A fourth case cited from the Ninth Circuit holds simply that a party can be charged with actual knowledge where it receives communications to a contact address that was improperly updated.  *Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004).  None of these cases are fully on-point to the facts of this case, nor are they persuasive enough to overturn the direct standard mandated to this Court by Ninth Circuit caselaw.

Both parties also urge comparisons to how other district courts in the Ninth Circuit, post-*Grokster*, have applied the knowledge requirement.  Plaintiff draws a comparison between the situation in this case and that in *Med-Systems, Inc. v. Masterson Mktg, Inc.*, No. 11-cv-695, 2011 WL 5873399 *7 (S.D. Cal. Nov. 23, 2011), which held that a CEO could have sufficient knowledge of infringement because he knew the content of all of his company's contracts.  By contrast, Google urges a comparison to another district court case, *Art Attacks Ink, LLC v. MGA Entm't, Inc.*, No. 3:04-cv-01035, 2007 WL 1989631, at *4 (S.D. Cal. Jul. 2, 2007), for the proposition that showing an entity "should have known" of a copyright is insufficient to establish contributory liability.  (Opp'n 2.)  This Court does not find either case convincing.  *Med-Systems* involved a CEO that had helped set the terms of the copyright, which is much more involved than Google is in this case; and the court in *Art Attacks* dismissed the case for an inability to demonstrate even that the defendant "should have known" of the direct infringement.

Turning now to the facts alleged in this Complaint, and taking all facts in the light most favorable to Plaintiff, the question becomes whether Plaintiff alleged sufficient facts to demonstrate actual knowledge, or at least specific notice, that Guetta's artwork constituted direct infringement.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** <u>CV 12-03423 SJO (VBKx)</u> | **DATE:** <u>September 11, 2012</u> |

Notably here, Plaintiff has alleged that Google "knew or should have known [the art pieces] were infringing works that Guetta did not own or have the rights to, and that Guetta used without permission." (Compl. ¶ 34.)  Plaintiff explains further that Google could have obtained actual knowledge of the infringing nature of Guetta's work while entering into its agreement. (Opp'n 9).  There is no evidence to back this up, but taking the alleged facts in the light most favorable to the Plaintiff, it is conceivable that Google in fact had knowledge of Guetta's direct infringement through its dealings with Guetta.³  By extension, it is also conceivable that Google had knowledge that photographers infringed on Plaintiff's copyright by taking and distributing photographs of the artwork without Plaintiff's permission.

That said, Plaintiff's statement of the standard for knowledge in this case is incorrect, and per above, a showing that Google "should have known" of the infringement, through Guetta's reputation or otherwise, is not sufficient to demonstrate "knowledge."  The Complaint should be amended by striking the words "or should have known" in every place they follow the word "knew."

> 3. <u>Material Contribution to Underlying Infringement</u>

In addition to demonstrating knowledge of the underlying infringement, Plaintiff must demonstrate either that Google materially contributed to or induced Guetta's or the photographers' direct infringement.  In its Motion, Google argues that this standard was not met because there is no allegation that Google materially contributed to Guetta's **creation** of the derivative artwork.  Plaintiff does not contest this fact; instead, it points out that its complaint alleges Google assisted Guetta in the unauthorized **display** of the derivative artwork, which is one of several protections granted to copyright holders under the Copyright Act, 17 U.S.C. § 501(a).

Google cites to *Visa* to support its statement of the test for material contribution, but a detailed reading of that case and other Ninth Circuit caselaw does not support Google's conclusions any more than its misstatement above of Plaintiff's complaint.  In a detailed discussion explaining why credit card companies cannot be liable for contributory infringement, the Ninth Circuit noted particularly that "the credit card companies do not help locate and are not used to distribute the infringing images . . . the issue here is reproduction, alteration, display, and distribution."*Visa*, 494 F.3d at 796.  In *Amazon.com*, by contrast, the court said that Google could potentially be held liable for contributory infringement (in a different case) because it "assists websites to distribute their infringing copies to a worldwide market and assists a worldwide audience of users to access infringing materials."  *Amazon.com*, 487 F.3d at 729.

---

³ Plaintiff explains a number of other ways that Google "should have known" of the infringement, including through (a) awareness of Guetta's reputation; (b) ignoring information about Guetta; (c) obtaining rights from Guetta to use his work; and (d) actually seeing the infringing works. (Compl. ¶ 34; *see also* Opp'n 8.)  However, none of these scenarios constitutes specific notice of infringement as required by *Napster*.

CASE NO.:   CV 12-03423 SJO (VBKx)           DATE:   September 11, 2012

Accepting Plaintiff's contentions as true, Google displayed Guetta's work at a promotional event, allowed and encouraged attendees to take pictures of this artwork, and made videos showing this artwork available online. Quite clearly, these actions contributed to the display of Guetta's artwork to the public, and helped a worldwide audience to access the infringing images. As such, the Court finds that Plaintiff has alleged facts sufficient to demonstrate material contribution by Google to Guetta's display of his artwork.

Plaintiff also alleges that Google has assisted photographers in their unauthorized reproduction and sale of the infringing images. Google does not contest this point directly, and so the Court also deems this element demonstrated.

       4.    Inducement of Underlying Infringement

Because Plaintiff has sufficiently pleaded material contribution by Google with respect to both Guetta and attending photographers' directly infringing activities, and particularly because neither party addressed the question of inducement particularly, the Court sees no need to address the question whether Google also induced either of these activities.

      D.    Vicarious Infringement

A claim for vicarious infringement requires a showing that a party "has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Visa*, 494 F.3d at 802 (footnote omitted). As with contributory infringement, vicarious infringement must be based on the direct infringement of a third party. *Io Group Inc. v. GLBT Ltd.*, No. 3:10-cv-01282, 2011 WL 4974337, at *7 (N.D. Cal. Oct. 19, 2011). The Court addresses each of these findings in turn.

       1.    Underlying Direct Infringement

As stated above, Google does not contest the presence of direct underlying infringement by Guetta or the photographers, and so the Court deems both actions to have been directly infringing for purposes of this analysis.

       2.    Right or Ability to Supervise Underlying Infringing Activity

The test for right or ability to supervise infringing requires **both** "a legal right to stop or limit the directly infringing conduct . . . [and] the practical ability to do so." *Amazon.com*, 487 F.3d at 730. It is irrelevant whether a party chooses to exercise this right; a decision not to supervise does not remove the responsibility to do so. *Visa*, 494 F.3d at 816-17. It is also irrelevant whether the

CASE NO.: CV 12-03423 SJO (VBKx)          DATE: September 11, 2012

supervised direct infringers could still infringe through alternative methods even assuming proper supervision is exercised. *Id* at 817.[4]

The Court first examines the issue of Google's supervision over Guetta's infringing activity. In its Motion, Google focuses on the fact that it could not have overseen Guetta's creation of the artwork. (Mot. 8.) Plaintiff responds that it does not know whether or not Google may have had some involvement in the creation or modification of the artwork, and that this will require a factual determination. (Opp'n 14.) It points out further that Google improperly limits its argument to Guetta's *creation* of the artwork, when in fact Google also had the ability to supervise Guetta's *display* of the artwork at the event. (Opp'n 14-15.) Google is correct that there are insufficient facts alleged to demonstrate supervision of Guetta's creation of the artwork; notations in an Opposition that some facts remain unknown cannot remedy a failure to properly allege facts in a complaint. However, Google again fails to address the possibility that it had the right and ability to control the display of Guetta's artwork. Plaintiff has alleged that Google "held [an] . . . event that they had the right and ability to supervise," during which the artwork in question was placed on display. (Compl. ¶ 35.) Google may not have created the venue, but taking Plaintiff's facts as true, Google could have restricted access to the infringing artwork, covered it up in some way, or otherwise taken steps to prevent its display. Google did none of these things, and its failure to exert its supervisory authority over the display is adequately alleged in the Complaint.

With respect to Google's right and ability to supervise photographers' infringing activities, the Court must address whether Google exerted control over (a) photography at the event; and (b) the subsequent sale of pictures online. Google does not contest that Plaintiff has alleged the right and ability to supervise photography at the event. It does contest, however, that Google had any right or ability to supervise subsequent distribution and sale of the photographs. (Mot. 9-10.) Plaintiff does not address this latter point directly in its Opposition, instead pointing the Court back to its Complaint where it alleges that pictures were posted on the internet, some of which were taken by Google. (Opp'n 15.) Even taking all facts as alleged in the Complaint as true, Google did not have practical control over the photographers' subsequent sale of their photographs on the internet. The only exception to this rule would be photographers or videographers in Google's employ; but this would constitute direct infringement by Google through the principle of *respondeat superior*. Google cannot be held contributorily liable for its own directly infringing actions. As such, any successful showing of vicarious infringement through photographers'

---

[4] Plaintiff urges that the Court follow the standard for right and ability to supervise stated in *Polygram Intern. Pub., Inc. v. Nevada/TIG, Inc.*, 855 F. Supp. 1314 (D. Mass. 1984), which views ability to control and contractual right to control as independent factors, either of which could establish supervisory authority. The analysis of caselaw presented in that case was conducted by a court that can exert at best persuasive influence over this case. The Court is not so persuaded; although thorough, the analysis in *Polygram* understandably does not focus on Ninth Circuit caselaw, and predates the seminal Ninth Circuit rulings in this area.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** CV 12-03423 SJO (VBKx) | **DATE:** September 11, 2012 |

actions must be based on event photographers' photography of the event, and not on resale of pictures online.

### 3. Direct Financial Interest in Underlying Infringing Activity

To establish a direct financial interest in the underlying infringing activity, a party must demonstrate a "causal relationship between the infringing activity" and a financial benefit, no matter how small that benefit is to the defendant. *Ellison v. Robertson*, 357 F.3d at 1079. The following discussion focuses on whether Plaintiff has demonstrated (a) a causal relationship between the direct infringement and any benefit to Google; and (b) that the alleged benefit to Google constitutes a financial benefit within the meaning of the vicarious liability test.

Plaintiff directs the Court to two theories of financial benefit in the caselaw that, it argues, demonstrate the presence of a causal relationship between Guetta's artwork and Google's alleged financial benefit. (Opp'n 16.) The first focuses on the role of infringing activity in enhancing the appeal of the venue to potential customers, most recently discussed with respect to infringing activities that attracted customers to a swap meet, to the benefit of a swap meet operator. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996) (noting a "continuing line of cases" imposing liability in similar circumstances dating back to the early 20th century). The second theory addresses the possibility that infringing activity acts as a "draw" to the site, also discussed in *Fonovisa*. These two theories appear to be related, if not entirely duplicative, but they do directly address the facts alleged here: Guetta's artwork, according to Plaintiff's Complaint, served as a "draw" that brought more attention to Google's event, and thereby enabled Google to obtain greater publicity for one of its commercial services.

Photographers' causal contribution to Google's publicity is simpler to establish: as Plaintiffs allege (and Google does not deny), the actions of photographers at the event allowed Google to gain media coverage of its event, bringing in further publicity.

The more difficult question to resolve is whether promotion and publicity for a commercial service constitutes a direct financial benefit. Plaintiff argues that Google's financial benefit in this case is its ability to obtain "valuable promotion and advertising of Google's business and services." (Compl. ¶ 40.) To support its assertion that promotion and advertising constitutes a direct financial benefit, it draws a comparison to *Napster*, where the Ninth Circuit found direct financial benefit from a larger customer base because "future revenue [was] directly dependent on 'increases in userbase.'" *Napster*, 239 F.3d at 1023. By contrast, Google argues that such a basis for benefit is insufficient as a matter of law, as determined by this District Court in *UMG Recordings, Inc. v. Veoh Networks Inc.*, No. 2:07-cv-05744, 2009 WL 334022 (C.D. Cal. Feb. 2, 2009). Neither case is exactly on point to the facts in this case. *Napster* discussed the benefit of an increased user base, which is one step less removed than mere "promotion" alleged here, and *Veoh* held that investors could not be said to gain directly from their investments' economic activities, which is significantly more removed than the case here (where Plaintiff is suing Google directly).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** CV 12-03423 SJO (VBKx) | **DATE:** September 11, 2012 |

Turning to the facts alleged in the case here reveals a clearer picture of how to proceed. Taking Plaintiff's allegations as true, Google chose to host its event at a venue displaying Guetta's artwork because it wanted to be associated with Guetta and his artwork to harness his ability to generate publicity. (Compl. ¶ 34.) Google's event was intended to promote and advertise its products and services, specifically "Google Music," and Google actively invited photography of the event. (Compl. ¶ 35). And Google took a video of the event and posted it on YouTube. (Compl. ¶ 38). These facts suggest that Google used this event to draw more attention to its "Google Music" service, with the goal of increasing its customer base and revenue accordingly. The step between an increased customer base (from *Napster*) and increased publicity leading to an increased customer base (here) is extremely fine; businesses have for years demonstrated that publicity can and does lead directly to an increased customer base. This Court is bound to follow the example set in *Napster* and therefore finds that Google's increased publicity constitutes a financial benefit for purposes of determining vicarious liability.

IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES IN PART** and **GRANTS IN PART** Google's Motion. Plaintiff has not properly alleged claims of contributory and vicarious liability against Google for Guetta's creation of the artwork in question, nor has it properly alleged vicarious liability for photographers' online sale of allegedly infringing photographs. Plaintiff's Second Amended Complaint is **DISMISSED WITH LEAVE TO AMEND**. Plaintiff shall file a Third Amended Complaint in accordance with this Order **on or before October 1, 2012**. Google has **ten days thereafter to respond**. Defendants may not raise claims that could have but were not raised in the instant motion.

IT IS SO ORDERED.