VENABLE LLP
Douglas C. Emhoff (SBN 151049)
Tamany Vinson Bentz (SBN 258600)
Email:    demhoff@venable.com
               tjbentz@venable.com
2049 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  (310) 229-9900
Facsimile:   (310) 229-9901

Joshua J. Kaufman (admitted pro hac)
Email:    jjkaufman@venable.com
575 7th Street, NW
Washington, D.C.
Telephone: (202) 344-4000
Facsimile: (202) 344-8300

Attorneys for Defendants Thierry Guetta
and It's a Wonderful World, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIM MARSHALL PHOTOGRAPHY, LLC | CASE NO. CV 12-03423 SJO (VBKx) |
| Plaintiff, | Honorable S. James Otero |
| v. | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| THIERRY GUETTA; ITS A WONDERFUL WORLD, INC.; GOOGLE, INC.; DOES 1 through 10 | Action Filed:  April 20, 2012 Trial Date:  August 20, 2013 |
| Defendant. | |

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1    TO PLAINTIFF AND ITS ATTORNEY OF RECORD:

2    NOTICE IS HEREBY GIVEN that on July1, 2013 at 10:00 a.m., or as soon

3 thereafter as counsel may be heard by the above-entitled Court, located at 312

4 North Spring Street, Los Angeles, CA, Defendants Thierry Guetta and It's a

5 Wonderful World, Inc. will and hereby do move the Court for summary judgment

6 pursuant to Federal Rule of Civil Procedure 56 on the ground that there is no

7 genuine issue as to any material fact and that the moving party is entitled to

8 judgment as a matter of law.

9    Plaintiff alleges two counts of copyright infringement concerning six works

10 of art created by Thierry Guetta. All six works are protected by the fair use

11 doctrine and, therefore, there can be no finding of copyright infringement.

12    This motion is based upon this Notice of Motion and Motion, the

13 accompanying Memorandum of Points and Authorities, and the declarations of

14 Tamany Vinson Bentz and Thierry Guetta.

15    This motion is made following the conference of counsel on May 13, 2013,

16 during which the parties discussed their motions for summary judgment.

17

18 DATED:  May 29, 2013                   VENABLE LLP

19

20

21                               By:  /s/Tamany Vinson Bentz

22                                    JOSHUA J. KAUFMAN
                                      TAMANY VINSON BENTZ
23                                    Counsel for Defendants Thierry
                                      Guetta and It's a Wonderful World,
24                                    Inc.

25

26

27

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................. 1

II.   BACKGROUND ................................................................ 1

    A.   Jim Marshall ............................................................. 1

    B.   The Asserted Photographs .......................................... 2

    C.   Defendants Thierry Guetta and It's a Wonderful World ......... 2

    D.   The Accused Guetta Works ......................................... 3

III.  LEGAL STANDARD ......................................................... 3

IV.   DEFENDANTS' ALLEGED USE OF THE PHOTOGRAPHS IS
       FAIR USE AND NOT COPYRIGHT INFRINGEMENT ...................... 4

    A.   Fair Use Standard ..................................................... 4

    B.   The First Factor Weighs in Favor of Fair Use Because Guetta's
        Works Are Transformative ........................................... 5

    C.   The Second Factor Weighs in Favor of Fair Use Because
        Plaintiff's Photograph is Not Highly Creative ..................... 11

    D.   The Amount Used Was No More than Necessary, Thus, This
        Factor Weighs In Favor of Fair Use ............................... 12

    E.   There is No Potential Market for Plaintiff's Photograph That
        Has Been Usurped By the Guetta Works ......................... 13

V.    PLAINTIFF DOES NOT OWN THE ASSERTED COPYRIGHTS ......... 15

VI.   PHOTOGRAPHS ARE PROPERLY REGISTERED .............................. 15

    A.   Lack of Registration Requires Judgment for Defendants ........ 15

    B.   Plaintiff's Registrations Limit the Measure of Available
        Damages ................................................................ 17

VII.  CONCLUSION ............................................................. 20

VENABLE LLP
2049 CENTURY PARK EAST  SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub'g Co.*, No. 3:09-cv-0061, 2010 WL 3785720, at *3-4 (D. Alaska Sept. 21, 2010)................................................16

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)................................................3, 4

*Bean v. Houghton Mifflin Harcourt Pub'g Co.*, No. 10-cv-8034-PCT-DGC, 2010 WL 3168624, at *3-4 (D. Ariz. Aug. 10, 2010)................................................16

*Bill Graham Archives v. Dorling Kindersley, Ltd.*, 448 F.3d 605, 615 (2d Cir. 2006)..........14

*Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006)................................................ passim

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575, 1145 S.Ct. 1164, 127 L.Ed.2d 500 (1994)................................................ passim

*Cariou v. Prince*, --- F.3d ---, No. 11-cv-1197, 2013 WL 1760521, at *1 (2d Cir. Apr. 25, 2013)................................................ passim

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ......3, 4

*Eastern Am. Trio Prods. v. Tang Elec. Corp.*, 97 F. Supp. 2d 395 (S.D.N.Y. 2000)...........19, 20

*Friedman v. Guetta*, Case No. CV 10-00014 DDP (JCx), (C.D. Cal.)........................................5

*Harney v. Sony Pictures Tele., Inc.*, 704 F.3d 173, 181 (1st Cir. 2013)....................................13

*Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 822 (9th Cir. 2003).................................................5, 6

*Leadsinger, Inc. v. BMG Publ'g*, 512 F.3d 522, 531 (9th Cir. 2007)........................................11

*Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 115-16 ............................................13, 15

*Mattel Inc. v. Walking Mtn. Prods.*, 353 F.3d 792, 806 (9th Cir. 2003)....................................14

*Monge v. Maya Magazines, Inc.*, 688 F.3d 1164 (9th Cir. 2012)................................................11

*Morris v. Guetta*, Case No. CV12-0684 JAK (RZx) (C.D. Cal.) ................................................5

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub'g Co.*, 712 F. Supp. 2d 84, 90-92 (S.D.N.Y. 2010)................................................17

*NXIVM Corp. v. Ross Inst.*, 364 F.3d 471 (2d Cir. 2004)................................................14

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007) ...............................6

*Rocking Chair Enters., LLC v. Macerich SCG Ltd. P'ship*, 407 F. Supp. 2d 1263, 1268-69 (W.D. Okla. 2005)................................................20

*SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1278 (9th Cir. 2013)......................4

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

*Stewart v. Abend*, 495 U.S. 207, 236 (1990)..................................................4

*Stokes Seeds Ltd. v. Geo. W. Park Seed Co.*, 783 F. Supp. 104, 107 (W.D.N.Y 1991) .............20

*Tattoo Art Inc. v. Tat Int'l LLC*, 498 F. App'x 341 (4th Cir. 2012) ...........................20

## Statutes

17 U.S.C. § 101...............................................................................18

17 U.S.C. § 107........................................................................... passim

17 U.S.C. § 408...............................................................................17

17 U.S.C. § 409...........................................................................16, 17

17 U.S.C. § 411...........................................................................15, 17

17 U.S.C. § 504.......................................................................18, 19, 20

37 C.F.R. § 202.3.........................................................................17, 19

## Other Authorities

http://www.ca2.uscourts.gov/11–1197apx.htm ...................................................10

Kenly Ames, *Note: Beyond* Rogers v. Koons:  *A Fair Use Standard for Appropriation*,
    93 Colum. L. Rev. 1473, 1478 (Oct. 1993) ..............................................3

William M. Landes, *Copyright, Borrowed Images, and Appropriation Art:  An Economic
    Approach*, 9 Geo. Mason L. Rev. 1, 1 (2000)............................................3

## Rules

Fed. R. Civ. P. 56 ...............................................................3, 4, 18, 19

## Treatises

11 *Moore's Federal Practice* § 56.122 (3d ed.) ...........................................18, 19

4 Melville B. Nimmer and David Nimmer, N*immer on Copyright*
    §13.05[A][2][a] (Matthew Bender, Rev. Ed.) ..........................................11

5 *Nimmer on Copyright* §14.04[E][1][d] (2007) ...............................................20

## Constitutional Provisions

U.S. Const., art.I § 8, cl. 8.................................................................5

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

## I.   **INTRODUCTION**

This case calls into question the breadth and scope of a critical mechanism in copyright law -- the fair use doctrine. Jim Marshall was a photographer who took pictures of musicians. Defendant Theirry Guetta is an artist that used certain documentary photographs and transformed them into new works of art, which embodied new expressions and aesthetics. Appropriation art, such as the works at issue here, has a long history and includes notable artists such as Andy Warhol, Pablo Picasso, and Marcel Duchamp.

Like other works in the genre of appropriation art, the accused works here are exempted from copyright infringement by fair use doctrine. Deciding whether the works are fair use requires the Court to weigh four factors, all of which favor fair use here.

Defendants additionally move for summary judgment or, alternatively, partial summary judgment based upon insufficient registrations in the asserted photographs. Plaintiff relies on registrations for the books in which the asserted photographs were published. The registrations for the books, however, are insufficient to cover the photographs independently and, therefore, the copyright statute prohibits Plaintiff from making an infringement claim based upon the individual photograph. Alternatively, if the Court concludes that Plaintiff can maintain its claims, the insufficient registrations limit Plaintiff's damages to only one statutory damage award per registration, as opposed to one award per photograph.

## II.   **BACKGROUND**

### A.   **Jim Marshall**

Jim Marshall was a photographer. *See* Defendants' Statement of Undisputed Fact 1 [hereinafter DSUF]. Jim Marshall passed away on March 24, 2010, and his estate was administered in San Francisco Superior Court, Case No. PES-10-293338. DSUF 2. The San Francisco Superior Court issued an Order for Final

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1  Distribution on Waiver of Account as a result of the administration of Jim

2  Marshall's estate. DSUF 3.

3      Jim Marshall's assistant, Amelia Davis, inherited her portion of Jim

4  Marshall's estate pursuant to the Order for Final Distribution on Waiver of

5  Account. DSUF 4. The Order states "Distribution of the Estate in Petitioner's

6  hands as described above under Paragraph 19 of the findings and any other

7  property of Decedent or of the Estate not now known or discovered shall be made

8  to Amelia Davis, as sole beneficiary." DSUF 5. Paragraph 19 referred to in the

9  distribution refers to only the actual physical photographs and the negatives. *Id.*

10 Neither the Order, Paragraph 19, nor any documents referenced by the Order

11 indicates that the copyrights in Mr. Marshall's photographs transferred to Ms.

12 Davis. DSUF 5-7. Ms. Davis then assigned what interest she had to Plaintiff on

13 May 15, 2012. DSUF 9.

14     **B.    The Asserted Photographs**

15     The Third Amended Complaint contends Defendants infringed copyrights in

16 six photographs. DSUF 10. Two of the photographs, one of Brian Jones and Jimi

17 Hendrix and one of Jimi Hendrix, were published in a book titled *Not Fade Away*.

18 DSUF 12. The book was published by Little Brown and Company and Little

19 Brown filed a copyright registration for the book, which covers only the "entire

20 text and compilation of photographs." DSUF 13. The other four photographs, one

21 of John Coltrane, one of Sonny Rollins, one of Thelonious Monk, Dizzy Gillespie

22 and Gerald Wilson, and one of Stanley Turrentine, were published in a photograph

23 book titled *Jim Marshall: Jazz*. DSUF 14. Plaintiff asserts that the copyright

24 registration in the book *Jazz* applies to the four individual images that were

25 included within the book.

26     **C.    Defendants Thierry Guetta and It's a Wonderful World**

27     Defendant Thierry Guetta is a famous artist who makes art under the

28 moniker "Mr. Brainwash." DSUF 18. The term "appropriation art" generally refers

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1   to any form of art, regardless of medium, that "borrows images from popular
2   culture, advertising, the mass media, other artists and elsewhere, and incorporates
3   them into new works of art." William M. Landes, *Copyright, Borrowed Images,*
4   *and Appropriation Art:  An Economic Approach*, 9 Geo. Mason L. Rev. 1, 1
5   (2000). The purpose of appropriation art is to create a new situation, and therefore
6   a new meaning or set of meanings, for a familiar image.

7        Appropriation art is well-recognized and widely appreciated. It has a long
8   history and renowned artists are among those who practiced, at one time or
9   another, this particular art form. For example, in 1912 Pablo Picasso began
10   combining found objects, such as newspaper clippings, musical scores, bottle
11   labels and discarded drawings, with his own original elements. Kenly Ames, *Note:*
12   *Beyond* Rogers v. Koons*:  A Fair Use Standard for Appropriation*, 93 Colum. L.
13   Rev. 1473, 1478 (Oct. 1993).

14        Defendant It's a Wonderful World is Guetta's company and it distributes his
15   works. DSUF 19. For simplicity, this motion refers to both entities as "Guetta" or
16   "Defendants."

17       **D.**     **The Accused Guetta Works**

18        The Third Amended Complaint accuses six pieces of artwork created by
19   Defendant Guetta of copyright infringement. Document 1, TAC at ¶ 23-27 & 31.
20   The Guetta Works are depicted in Appendix A alongside the asserted photographs.

21   **III.**   **LEGAL STANDARD**

22        Summary judgment is appropriate when the record indicates that "there is no
23   genuine issue as to any material fact and ... the moving party is entitled to a
24   judgment as a matter of law." Fed. R. Civ. P. 56 (c); *see also Celotex Corp. v.*
25   *Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material
26   facts are those necessary for the proof or defense of a claim, and are determined by
27   referring to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248,
28   106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a motion for summary

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

3

1  judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable

2  inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

3      The moving party has the initial burden of establishing the absence of a

4  material fact for trial. *Anderson*, 477 U.S. at 256. If the moving party satisfies its

5  initial burden, the nonmoving party "may not rest upon the mere allegations or

6  denials" of the moving party's pleadings, but "must set forth specific facts showing

7  that there is a genuine issue for trial." Fed. R. Civ. P. 56 (e). Furthermore, "Rule

8  56(c) mandates the entry of summary judgment ... against a party who fails to

9  make a showing sufficient to establish the existence of an element essential to that

10 party's case, and on which that party will bear the burden of proof at trial." *Celotex*

11 *Corp.*, 477 U.S. at 323. Thus, if the nonmoving party does not make a sufficient

12 showing to establish the elements of its claims, the Court must grant the moving

13 party's motion.

14 **IV.   DEFENDANTS' ALLEGED USE OF THE PHOTOGRAPHS IS FAIR**

15 **USE AND NOT COPYRIGHT INFRINGEMENT.**

16 **A.   Fair Use Standard**

17      Fair use is a well-recognized exemption from copyright infringement. It is

18 an essential element of the copyright regime, and it is every bit as important as the

19 robust protection of copyrights. The Supreme Court recognizes that "[f]rom the

20 infancy of copyright protection, some opportunity for fair use of copyrighted

21 materials has been thought necessary to fulfill copyright's very purpose."

22 *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575, 1145 S.Ct. 1164, 127

23 L.Ed.2d 500 (1994). In the words of the Ninth Circuit, fair use is important to

24 prevent "overzealous" copyright holders from "stamp[ing] out the very creativity

25 that the Act seeks to ignite." *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d

26 1273, 1278 (9th Cir. 2013) (quoting *Stewart v. Abend*, 495 U.S. 207, 236 (1990)).

27      Section 107 of the Copyright Act delineates four nonexclusive factors for

courts to consider when determining fair use. The statute states:

28      In determining whether the use made of a work in any particular case

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

4

is a fair use the factors to be considered shall include—

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.
>
> The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.

17 U.S.C. § 107.

In weighing these four factors, the Supreme Court has held that "[t]he task is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis." *Campbell*, 510 U.S. at 577.[1] The standard for fair use is a flexible one and courts are "'to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity that the law is designed to foster.'" *Id.* (citations omitted). Importantly, not all factors must be met in order for the Court to make a determination of fair use. *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 822 (9th Cir. 2003). All four statutory factors "are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell*, 510 U.S. at 578. That purpose, according to the Constitution of the United States, is to promote science and art. U.S. Const., art.I § 8, cl. 8 ("To promote the Progress of Science and useful Arts.").

## B.   The First Factor Weighs in Favor of Fair Use Because Guetta's Works Are Transformative[2]

---

[1] Plaintiff's counsel previously brought two other suits against Guetta on behalf of other photographers. *Morris v. Guetta*, Case No. CV12-0684 JAK (RZx) (C.D. Cal.); *Friedman v. Guetta*, Case No. CV 10-00014 DDP (JCx), (C.D. Cal.). The liability determinations in these cases are not dispositive of the issues raised in this case because they deal with entirely different works of art and different photographs and both were decided before *Cariou v. Prince*.

[2] The Ninth Circuit has not yet ruled on fair use in the context of an art appropriation case. However, the Second Circuit just issued a landmark decision

(continued...)

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

5

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1    The first factor weighs heavily in favor of fair use here because the Guetta

2    Works are transformative artworks that give the depicted musicians a new

3    expression and character in Guetta's own artistic style. This factor considers

4    primarily "the purpose and character of the use, including whether such use is of a

5    commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1).

6    The Supreme Court stated that the ultimate question here is whether the new work

7    merely replaces the original work or whether it "adds something new, with a

8    further purpose or different character, altering the first with a new expression,

9    meaning, or message; it asks, in other words, whether and to what extent the new

10   work is 'transformative.'" *Campbell*, 510 U.S. at 579.

11   In order to be transformative a new work does not have to "comment on the

12   original artist or work, or popular culture." *Cariou v. Prince*, --- F.3d ---, No. 11-

13   cv-1197, 2013 WL 1760521, at *1 (2d Cir. Apr. 25, 2013). Nor, does a new work

14   have to be criticism, comment, news reporting, teaching, scholarship, and research.

15   *Id.*, at *5; *see also Campbell*, 510 U.S. at 577 (reiterating that the preamble

16   paragraph to the statute is illustrative and not limiting); *Blanch v. Koons*, 467 F.3d

17   244, 251 (2d Cir. 2006) (quoting *Campbell*); *Perfect 10, Inc. v. Amazon.com, Inc.*,

18   508 F.3d 1146, 1165 (9th Cir. 2007) (holding that Google's use of the images was

19   fair because it served "a different purpose"); *Kelly v. Arriba Soft Corp.*, 336 F.3d

20   811, 819 (9th Cir. 2003) (finding fair use because the second use served a different

21   "function").

22

23   _____

     (continued)

24

25   on point in *Prince v. Cariou*. In this case the Second Circuit had the benefit of a
     large and diverse set of amicus briefs filed by interested parties from across the
     spectrum of the art world including photographers. While not a Ninth Circuit case

26   we believe the court should be guided by this decision as it articulates the
     application of fair use when it comes to art appropriation, builds on prior case law

27   and conforms to the standards set forth by the Supreme Court.

28

6

1        The most reliable indicia of the character and purpose of works are the

2    objective ones – the works themselves and how they are perceived by "the

3    reasonable observer." *Cariou*, 2013 WL 1760521, at *6 ("What is critical is how

4    the work in question appears to the reasonable observer, not simply what an artist

5    might say about a particular piece or body of work."). Thus, in order to determine

6    whether a work is transformative the Court should look at the photographs and

7    artwork side-by-side and "examine how the artworks may 'reasonably be

8    perceived' in order to assess their transformative nature."[3] *Id.* Whether something

9    is transformative, however, does not depend on the artistic merits of the new work

10   or whether it is an improvement over the original. *Campbell*, 510 U.S. at 582-83.

11       The Guetta Works here are the epitome of transformative works because

12   they add a new character, expression, and message to the underlying images. The

13   asserted photographs are a real-time documentation of the musicians and any

14   reasonable observer would perceive them as such. The Guetta Works, on the other

15   hand, take the images and transform them by translating them into a new medium

16   with new expression and a different aesthetic.  They have skewed dimensions,

17   different focal points, backgrounds, and colors and overall impact. DSUF 21-40.

18   The images in the Guetta Works are no longer simply photographs documenting

19   musicians, as there is an intensity, boldness, and an edge in the Guetta Works that

20   are not found in the original photographs. *Id.* The Guetta Works create a

21   completely different feel to the images, and the emotional response evoked by the

22   two sets of works is completely dissimilar. The visceral response to the works is

23   different on every intellectual and artistic level.

24       The Guetta Works have a completely different character than the asserted

25   photographs. In *Blanch v. Koons*, also an art appropriation case, the Second Circuit

26

27   [3] For this reason, Defendants included Appendix A with this brief that depicts the
     images side-by-side.

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

found a work transformative based on the specific physical changes, like those here, between the photograph and the accused work. *Blanch*, 467 F.3d 244, 253 (2d Cir. 2006) (holding use was fair when the original work in *Blanch* was a photograph in "a glossy American 'lifestyles' magazine") In *Blanch*, like in this case, the accused work did not incorporate the colors, the background of the photograph, the medium, the size of objects in the picture or the detail. *Id.* Plaintiff's asserted photographs here are documentary records of musicians. They are black and white photographs – the only color differentiation is shades of gray – depicting a specific period of time. DSUF 10 & 11. The Guetta Works are colorful – they reduce the musician down to a contrast stencil and then use color to emphasize different features. DSUF 21-40. For instance, Guetta's Work, *Monk & Gillespie*, focuses on different people than the asserted photograph. DSUF 32-33. The asserted photograph is a tight cropped shot with three individuals – Thelonious Monk, Dizzy Gillespie, and Gerald Wilson – and Dizzy Gillespie is at the center of the photograph. DSUF 10 & 33. By dropping one of the individuals Guetta completely changed the focus to Thelonious Monk and his large lopsided smile.

The Guetta Works have a different expression too. Because the asserted photographs are documentary records, they are an accurate representation of the musician. The Guetta Works, on the other hand take the musicians out of context and change the image. For instance, the Guetta Work, *Live Today Worry Tomorrow*, shows Brian Jones and Jimi Hendrix. The asserted photograph shows the two musicians walking together in front of a fence, while Brian Jones is carrying a beer can. DSUF 8. The Guetta Work, on the other hand, shows the two as if they were graffiti artists that just finished painting "Live Today Worry Tomorrow" on the wall behind them. DSUF 35-37. Brain Jones is carrying a spray paint can instead of a beer can and holding a paint mask over his face. DSUF 36. Jimi Hendrix is wearing an "I love NY" button. DSUF 37. Additionally, the Guetta

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1   Works "drip" down to the bottom of the work, unlike in the asserted photographs

2   which are a crisp portrayal of the musicians in action. DSUF 22.

3        With all of these differences, the Guetta Works are more than just a

4   superseding picture or a presentation of the same material in a new form; rather

5   they are reasonably perceived as a transformation of the photograph. *Campbell*,

6   510 U.S. at 582-83 (noting that the "threshold question" is whether the

7   transformative purposes, in *Campbell* it was a parody, can be "reasonably

8   perceived"). Unlike Plaintiff's photograph, the Guetta Works are not merely a

9   documentation of musicians but rather a new transformative work of art

10  incorporating new expression and visual commentary. Essentially, the Guetta

11  Works use the "'raw material,'" – the musician -- to create an independent work,

12  which is fair use. *Blanch v. Koons*, 467 F.2d at 253 ("When, as here, the

13  copyrighted work is used as 'raw material' in the furtherance of distinct creative or

14  communicative objectives, the use is transformative." (internal citations omitted)).

15       The Guetta Works also serve a transformative purpose. The asserted

16  photographs are intended to be documentary in purpose and a convincing likeness

17  of the particular musicians. The Guetta Works address a completely different

18  artistic purpose, a pop art work of fine art that uses the portrait imagery only as raw

19  material to make a piece of artwork that people will enjoy independent of the

20  featured musician. DSUF 24.

21       The Court of Appeals for the Second Circuit recently considered a similar

22  use of photographs for artwork and found fair use. Patrick Cariou is a photographer

23  that published *Yes Rasta*, a book of portraits and landscapes taken while he was

24  living with Rastafarians in Jamaica. *Cariou v. Prince,* 2013 WL 1760521, at *3.

25  Richard Prince, a famous appropriation artist, incorporated several of the

26  photographs from *Yes Rasta* in a series of paintings and collages called *Canal*

27  *Zone. Id.* Prince's first showing of Canal Zone included "35 photographs torn out

28  of *Yes Rasta* and pinned to a piece of plywood. ***Prince altered those photographs***

9

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

*significantly, by among other things painting 'lozenges' over their subjects'*
*facial features* and using only portions of some of the images." *Id.* at *2 (emphasis
added). Then Prince purchased more copies of *Yes Rasta* and created more works
using partial or whole images from *Yes Rasta*. *Id.* Cariou sued Prince for copyright
infringement. The district court rejected the fair use defense, granted Cariou's
motion for partial summary judgment, and denied Prince's motion for summary
judgment. *Id.* The Court of Appeals for the Second Circuit reversed this decision
because the Second Circuit held that the majority of the accused pieces were fair
use and not infringement. *Id.*

The Second Circuit found that Prince's artworks "manifest an entirely
different aesthetic from Cariou's photographs." *Cariou*, 2013 WL 1760521, at *6.
For instance, Cariou's work was black-and-white photographs, whereas Prince's
works were collages in color -- the "composition, presentation, scale, color palette,
and media are fundamentally different and new compared to the photographs, as is
the expressive nature of Prince's work." *Id.* In short, Prince's work "presented the
images with a fundamentally different aesthetic." *Id.* at 7.

Similarly here, the asserted photographs are simply a black-and-white shot.
In contrast, Guetta's works are in a different medium of presentation, are an
entirely different scale, and use an entirely different color palette. Where Prince
added color lozenges to the faces of the Rastafarians, Guetta added graffiti, colors
and cropping to change the entire emphasis of the artwork.[4] Where Prince removed
the Rastafarians from the natural background, Guetta took the musicians out of the
context of a photograph by changing them into a high contrast stencil with no
definition or color scale.

---

[4] A visual comparison of the transformed Guetta Works and the transformed Prince
works reveals the Guetta Works to be a great deal more transformative then the
Prince works. A link to the Prince works cited by the Second Circuit can be found
at, http://www.ca2.uscourts.gov/11–1197apx.htm.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1    When he created the Guetta Works, Guetta believed his work was a fair use,

2    that his work like many other artists of his genre are acting within the fair use

3    doctrine. DSUF 41.

4    **C.**    **The Second Factor Weighs in Favor of Fair Use Because**

5         **Plaintiff's Photograph is Not Highly Creative.**

6    The second factor is "the nature of the copyrighted work." 17 U.S.C. §

7    107(2). It "calls for recognition that some works are closer to the core of intended

8    copyright protection than others, with the consequence that fair use is more

9    difficult to establish when the former works are copied." *Campbell*, 510 U.S. at

10   586. There are two distinctions between works -- whether it has been published

11   previously and whether it is creative -- that have been used to evaluate the

12   importance of this factor. *Blanch*, 467 F.3d at 256. Limited weight is placed on this

13   factor when, as here, the accused works are transformative. *Cariou*, --- F.3d ---,

14   2013 WL 1760521, at *9; *Blanch*, 467 F.3d at 257. Accordingly, here this factor

15   weighs in favor of fair use.

16   While photographs are indeed protected by copyright, the documentary

17   photographs here are on the lower end of the spectrum. Indeed, "the more

18   informational or functional the plaintiff's work, the broader should be the scope of

19   the fair use defense." 4 Melville B. Nimmer and David Nimmer, N*immer on*

20   *Copyright* §13.05[A][2][a] (Matthew Bender, Rev. Ed.) (citing *Leadsinger, Inc. v.*

21   *BMG Publ'g*, 512 F.3d 522, 531 (9th Cir. 2007)). The asserted photographs are

22   more factual than creative – they are documentary records of musicians. Most of

23   the works depict the musicians performing their trade by playing an instrument.

24   None of the asserted photographs are posed or contrived scenes featuring the

25   musicians.[5]

26

27   [5] The photographs at issue here have all been previously published.  DSUF 12 &
     14. In this regard, they are unlike the photographs considered by the Ninth Circuit

28   in *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164 (9th Cir. 2012), in which the
     (continued...)

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1   Because the asserted photographs are documentary works with weak

2   copyright protection, this factor weighs in favor of fair use.

3       **D.**    **The Amount Used Was No More than Necessary, Thus, This**

4           **Factor Weighs In Favor of Fair Use**

5       The third factor concerns whether "the amount and substantiality of the

6   portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(2).

7   The question for this factor is whether the "'quantity and value of the materials

8   used' … are reasonable in relation to the purpose of the copying." *Campbell*, 510

9   U.S. at 586. A secondary user, like Guetta, "'must be [permitted] to 'conjure up' at

10  least enough of the original' to fulfill its transformative purpose". *Id.* at 588; *see*

11  *also Cariou*, 2013 WL 1760521, at *10.[6] With respect to four of the Guetta

12  Works, Guetta took only the musician and the instrument, both of which were

13  necessary to show his interpretation of a musician playing music. With respect to

14  his work showing Jimi Hendrix and Brian Jones as graffiti artists, he took only the

15  two individuals. With respect to the Guetta Work, Monk & Gillespie, he took only

16  the two individuals that were the focus of his interpretation of the scene. In short,

17  Guetta took only what was necessary to fulfill his artistic transformative purpose

18  for the works.

19      The focus of this factor is further limited to key creative decisions and the

20  protectable elements of the original work. *See Blanch v. Koons*, 467 F.3d 244 at

21  258 (holding the factor weighs in favor of fair use because defendant "did not copy

22  those aspects of [the original photograph] 'whose power lies in [Blanch's]

23   

24  (continued)

25  court considered whether the use of unpublished personal photographs was a fair
    use.

26  [6] Like the other factors, this one is limited when, as here, the secondary use is
    transformative. *See Cariou*, 2013 WL 1760521, at *9-10 (holding that key portions

27  of the photograph were used but it was still fair use because the photographs were
    transformed "into something new and different").

28   

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1    individualized expression"); *Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109,

2    115-16 ("In assessing the amount and substantiality of the portion used, we must

3    focus only on the protected elements of the original."). The protectable elements of

4    photograph are limited to the subject matter the photographer created. *Harney v.*

5    *Sony Pictures Tele., Inc.*, 704 F.3d 173, 181 (1st Cir. 2013). "Subject matter that

6    the photographer did not create could be viewed as 'facts' that, like ideas, are not

7    entitled to copyright protection." *Id.* In photographs, such as those here, the

8    elements the photographer created and, thus, the protected elements are the

9    "particular lighting, the resulting skin tone of the subject, and the camera angle that

10   [was] selected." *Leibovitz*, 137 F.3d at 116. The subject matter of a photograph,

11   here the individual musicians, is not a protectable element of copyright. *See*

12   *Harney v. Sony Pictures Tele., Inc.*, 704 F.3d 173, 180-81 (1st Cir. 2013) (holding

13   that subject matter, among other things, is not a protectable element in a

14   photograph).

15         Here, Guetta took only those aspects of the photograph that are not

16   protectable under copyright law – the likeness of the musicians. The Guetta Works

17   are not a verbatim copy of the asserted photographs. Guetta tailored the amount of

18   the original photograph that he used and used no more than was necessary to

19   conjure up, in most cases, an individual playing an instrument. Guetta did not

20   adopt the essence of the asserted photographs because he omitted the gray scale

21   approach used in the photograph and instead his works are black high contrast

22   stencils. Guetta further did not incorporate other aspects of the photograph, such as

23   the backgrounds. DSUF 23. For this reason, this factor also weighs in favor of fair

24   use.

25         **E.    There is No Potential Market for Plaintiff's Photograph That Has**

26                 **Been Usurped By the Guetta Works**

27         The fourth fair use factor is "the effect of the use upon the potential market

28   for or value of the copyrighted work." 17 U.S.C. § 107(4). In considering the

13

fourth factor, the question is "'not whether the secondary use suppresses or even destroys the market for the original work or its potential derivatives, but whether the secondary use usurps the market of the original work.'" *Blanch*, 467 F.3d at 258 (quoting *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471 (2d Cir. 2004)); *Campbell*, 510 U.S. at 592. Courts have narrowed the consideration of this factor in two ways. First, if the accused work is transformative, then it is much less likely that the original author suffered market harm. *Bill Graham Archives v. Dorling Kindersley, Ltd.*, 448 F.3d 605, 615 (2d Cir. 2006). Second, the relevant market for potential derivative works includes only those that the author of the original work would in general develop or license others to develop. *Campbell*, 501 U.S. at 592; *Cariou*, 2013 WL 1760521, at *8; *Mattel Inc. v. Walking Mtn. Prods.*, 353 F.3d 792, 806 (9th Cir. 2003).

Under similar circumstances, courts consider whether the accused works interfered with or upset any plans the author had for the original work. In *Blanch*, for instance, the Second Circuit held that this factor weighed heavily in favor of fair use because the accused work did not upset any of Blanch's plans for her photograph. *Blanch*, 467 F.3d at 258; *see also Campbell*, 510 U.S. at 593-94 (finding fair use because, among other things, "there was no evidence that a potential rap market was harmed in any way by 2 Live Crew's parody, rap version"). Here, Plaintiff has been unable to identify a single contract or transaction that did not come to fruition because of the Guetta Works. DSUF 42-44. Furthermore, Plaintiff readily admits that no one has ever licensed the photographs for use in fine artwork such as the accused works. DSUF 45. The parties target audiences are very different and there is nothing in the record to indicate any overlap in the parties' respective markets or that Guetta's works had any impact on the marketing of the Marshall photographs.  DSUF 43-44.

Plaintiff's only stated harm is that it lost the licensing revenues associated with the Guetta Works. DSUF 46. The loss of licensing revenue for the accused

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    work, however, is not a market effect recognized by the fair use analysis. *See*

2    *Leibovitz*, 137 F.3d at 116-17 (finding fair use because, in part, plaintiff's only

3    "argument for actual market harm is that the defendant has deprived her of a

4    licensing fee by using the work as an advertisement"). There is no evidence of

5    record to support a finding that Plaintiff lost any other licensing revenue or revenue

6    of any kind and, therefore, no basis to find this factor supports fair use.

7         For this reason, this factor favors fair use.

8    **V.    PLAINTIFF DOES NOT OWN THE ASSERTED COPYRIGHTS.**

9         As a matter of law, Plaintiff cannot maintain its copyright infringe claims

10   because the record does not reflect that it is the owner of the asserted copyrights.

11   Only an owner can assert a copyright. 17 U.S.C. § 501(b). Ownership of a

12   copyright is distinct from ownership of a material object. 17 U.S.C. § 202. There is

13   no evidence in the record here showing that Plaintiff is the owner of the copyrights.

14   The estate documents show that Amelia Davis inherited just the material objects,

15   the photographs and negative, but not the copyrights. The distribution Order gave

16   Amelia Davis the property described in Paragraph 19 of the order, which includes

17   only material objects such as the negatives and prints, and any property not known

18   at the time of the distribution. DSUF 5-7. There is no evidence indicating that the

19   asserted copyrights were not known at the time of the distribution. Accordingly,

20   there are no facts indicating that the copyrights were inherited by Amelia Davis or

21   subsequently transferred to Plaintiff. Without such evidence, Plaintiff cannot

22   pursue its copyright claims and the Court should grant Defendants' motion.

23   **VI.   PHOTOGRAPHS ARE PROPERLY REGISTERED**

24        **A.    Lack of Registration Requires Judgment for Defendants**

25        Plaintiff's copyright registrations do not cover the underlying photographs in

26   this case, and accordingly, the Court should grant Defendants summary judgment

27   in this case. 17 U.S.C. § 411(a) provides that "no civil action for infringement of

28   the copyright in any United States work shall be instituted until preregistration or

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1  registration of the copyright claim has been made in accordance with this title."

2  Because the photographs here are not covered by copyrights, this statute warrants

3  judgment for Defendants.

4       &bull;   *Not Fade Away*

5       Plaintiff's copyright registration for *Not Fade Away* is expressly limited to

6  the "text and *compilation of photographs*." DSUF 13. In order to register a

7  copyright and receive the attendant benefits, the applicant must set forth, *inter alia*,

8  "the title of the work," "the year in which creation of the work was completed"

9  and, if applicable, the date of first publication. *See* 17 U.S.C. § 409(6)-(8).

10  Regardless of whether a copyright registration in a compilation can *ever* cover the

11  constituent parts, the registration here unequivocally covers only the compilation.

12       The registration sets forth the title of the single work claimed—the

13  compilation *Not Fade Away*—and specifically claims copyright only in the "text

14  and compilation of photographs." DSUF 13. The registration certificate does not

15  cover the individual Hendrix and Hendrix/Jones photos asserted by Plaintiff in this

16  action. *See, e.g., Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub'g Co.*, No.

17  3:09-cv-0061, 2010 WL 3785720, at *3-4 (D. Alaska Sept. 21, 2010) (finding that

18  registration of photographic database did not affect registration of individual

19  photographs because Plaintiff did not comply with requirements of 17 U.S.C. §

20  409); *Bean v. Houghton Mifflin Harcourt Pub'g Co.*, No. 10-cv-8034-PCT-DGC,

21  2010 WL 3168624, at *3-4 (D. Ariz. Aug. 10, 2010) (same). *But see Perfect 10 v.*

22  *Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1166-67 (C.D. Cal. 2002) (finding

23  registrations sufficient, but noting that, unlike here, the registrations recognized

24  they were collective works made for hire).

25       &bull;   *Jim Marshall: Jazz*

26       Plaintiff's copyright registration for *Jim Marshall: Jazz* is similarly limited

27  to the collection of photographs and does not extend to the photographs

28  themselves. The Copyright Act requires that a copyright owner include in his

1  application, among other things, the title of the work(s) claimed. 17 U.S.C. §
2  409(6). Although mistakes in a copyright application may be cured, omitted
3  information may not be retroactively inserted into the application. *See* 17 U.S.C. §
4  411(b). Here, on the *Jim Marshall: Jazz* application, the photographs themselves
5  are not identified by title; instead, only the collection of photographs, called *Jim*
6  *Marshall: Jazz*, is identified. DSUF 15.

7      Moreover, the U.S. Copyright Office has specified a series of requirements
8  for a copyright owner to acquire group registration of photographs in a single
9  application. *See* 17 U.S.C. §§ 408, 409 (Register of Copyrights to prescribe
10 regulations to govern manner of registration); 37 C.F.R. § 202.3(b)(2) (applicant to
11 use prescribed forms); *cf. Muench Photography, Inc. v. Houghton Mifflin Harcourt*
12 *Pub'g Co.*, 712 F. Supp. 2d 84, 90-92 (S.D.N.Y. 2010) (Copyright Office
13 regulations entitled to *Chevron* deference; other publications entitled to *Skidmore*
14 deference). First, an applicant may submit Form GR/PPh/CON to affect group
15 registration. Jim Marshall did not submit this form. DSUF 16. Second, even if
16 Form GR/PPh/CON is not used, "the individual date of first publication for each
17 photo must be provided on the deposited copies of the photos." Third, on Form
18 VA—the form used to register *Jim Marshall: Jazz*—the owner must indicate that
19 the registration is "Group Registration/Published Photos" and give the approximate
20 number of photographs in the group. Here, Mr. Marshall complied with none of
21 these requirements and, as a result, the registration extends only to the collection of
22 photographs embodied in *Jim Marshall: Jazz*. Accordingly, Plaintiff is unable to
23 sue on the individual photographs in that book.

24      Because Plaintiff does not have a registration for the individual photographs,
25 17 U.S.C. § 411(a) prohibits Plaintiff as a matter of law from making infringement
26 claims based on the photographs.

27  **B.    Plaintiff's Registrations Limit the Measure of Available Damages**

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

Even if the Court finds that the registrations extend to the underlying photographs, the insufficiencies in its registrations will limit Plaintiff to one award of statutory damage for any infringement using photographs in each of the books, regardless of the number of works found to infringe. 17 U.S.C. § 504(c) authorizes copyright owners to elect statutory damages in lieu of actual damages.[7] However, the Copyright Act allows only one award of statutory damages for any "work" infringed, 17 U.S.C. § 504 (c)(1), and further states that "all the parts of a compilation . . . constitute one work." § 504(c)(1).  Plaintiff's registrations, if valid, render the books as works and each photo part of the compilation.  Thus, as a matter of law Plaintiff can recover, at most, only one statutory damages award for each book.

Plaintiff has identified two copyright registrations in this action—one regarding *Not Fade Away* and one regarding *Jim Marshall: Jazz*. As discussed above, those registrations cover only the compilation or collection of photographs, not the individual photos themselves. The Copyright Act defines a compilation as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. The term "compilation" also includes "collective works," which are defined as "work[s] ... in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." *Id.* The clear language of the Copyright Act and corresponding regulations, as well as relevant case law, permit (at most) two statutory damages awards in this case.

---

[7] Summary judgment is appropriate on any "part of a claim or defense."  Fed. R. Civ. P. 56, advisory committee's note to 2010 amendments; see also 11 *Moore's Federal Practice* § 56.122 (3d ed.) (stating that issue-narrowing is, and always has been, appropriate on summary judgment).

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

The Copyright Act states that "all the parts of a compilation . . . constitute one work." Statutory damages are limited to one award per "work." 17 U.S.C. § 504(c)(1). The Copyright Office's regulations state:

> For the purpose of registration on a single application and upon payment of a single registration fee, the following shall be considered a single work . . . [i]n the case of published works: all copyrightable elements that are otherwise recognizable as self-contained works, that are included in a single unit of publication, and in which the copyright claimant is the same.

37 C.F.R. § 202.3(b)(4)(i)(A). Thus, both the Copyright Act and the relevant regulation contemplate, as a matter of law, no more than two "works" in this case. Relevant case law supports limiting statutory damages to two works in this case.[8] For example, in *Eastern Am. Trio Prods. v. Tang Elec. Corp.*, 97 F. Supp. 2d 395 (S.D.N.Y. 2000), the district court found that the defendant infringed at least 25 of the plaintiff's product photographs featured in two sales catalogs. Although the court permitted the plaintiff to sue based on infringement of the individual photos (even though only the catalogs were registered), it stated:

> For purposes of determining statutory damages, all the parts of a compilation or derivative work constitute one work. In other words, although the Court has found that [Defendant] copied multiple independently copyrightable photographs, statutory damages may be awarded solely for each compilation that was infringed. Plaintiff has submitted proof of copyright registration and established infringement of only two works: the Trisonic 1994 Catalog and the Trisonic 1998 Catalog. In consequence, plaintiff is entitled to statutory damages for infringement of two compilations.

---

[8] This argument is an appropriate basis for summary judgment because summary judgment is appropriate on any "part of a claim or defense." Fed. R. Civ. P. 56, advisory committee's note to 2010 amendments; *see also* 11 Moore's Federal Practice § 56.122 (3d ed.) (stating that issue-narrowing is, and always has been, appropriate on summary judgment).

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1    97 F. Supp. 2d at 420 (internal footnotes omitted). The leading treatise on

2    Copyright law also supports Defendants' position on this subject. *See* 5 *Nimmer on*

3    *Copyright* §14.04[E][1][d] (2007) (noting that if there is a single registration in a

4    collective work, only one statutory damage award is permissible; *see also Tattoo*

5    *Art Inc. v. Tat Int'l LLC*, 498 F. App'x 341 (4th Cir. 2012) ("Although parts of a

6    compilation . . . may be regarded as independent works for other purposes, for

7    purposes of statutory damages, they constitute one work."); *Rocking Chair Enters.,*

8    *LLC v. Macerich SCG Ltd. P'ship*, 407 F. Supp. 2d 1263, 1268-69 (W.D. Okla.

9    2005) (only one measure of statutory damages for song and CD on which it

10   appears); *Stokes Seeds Ltd. v. Geo. W. Park Seed Co.*, 783 F. Supp. 104, 107

11   (W.D.N.Y 1991) ("[T]he individual photographs in [plaintiff's] book a[re]

12   copyrightable works, separate and independent from the books in which they

13   appear. However, these photographs are assembled into a collective whole in one

14   work . . . . [The book] is therefore a "collective work" under the 1976 Act, and thus

15   also necessarily a compilation. Accordingly, under 17 U.S.C. § 504(c)(1), all of the

16   photographs appearing in the book constitute one work, justifying a single award

17   of statutory damages.").

18        Here, Plaintiff has presented only two registration certificates in Mr.

19   Marshall's two books. Regardless of whether or not Plaintiff is permitted to pursue

20   copyright infringement claims based on the underlying photographs, as a matter of

21   law, only one award of statutory damages for each registration is permitted.

22   **VII.   CONCLUSION**

23        For the foregoing reasons, the Court should grant Defendants' motion for

24   summary judgment as to both of Plaintiff's copyright infringement claims.

25

26   DATED: May 29, 2013              VENABLE LLP

27                                    By: /s/Tamany Vinson Bentz
                                      TAMANY VINSON BENTZ
28                                    Counsel for Thierry Guetta and It's a Wonderful World, Inc.

APPENDIX A



Davis Exhibit: 22
Bhuwan Exhibit: 05

Davis Exhibit: 08
Guetta Exhibit: 42



**Davis Exhibit: 21**
**Bhuwan Exhibit: 04**

**Davis Exhibit: 07**
**Guetta Exhibit: 38**





Guetta Exhibit: 46



Davis Exhibit: 09
Guetta Exhibit: 43



**Davis Exhibit: 23**
**Bhuwan Exhibit: 06**

**Davis Exhibit: 09**
**Guetta Exhibit: 43**



Davis Exhibit: 08
Bhuwan Exhibit: 01



Davis Exhibit: 04
Guetta Exhibit 41



**Davis Exhibit: 19**
**Bhuwan Exhibit: 02**



**Davis Exhibit: 05**
**Guetta Exhibit: 40**



**Davis Exhibit: 20**
**Bhuwan Exhibit: 03**



**Davis Exhibit: 06**
**Guetta Exhibit: 39**